**In re Anonymous No. 8 D.B. 90**

Disciplinary Board Docket No. 8 D.B. 90.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

ECKELL, *Member,* April 30, 1992—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

The Office of Disciplinary Counsel filed a petition for discipline, docketed at No. 8 D.B. 90, on January 24, 1990. The petition alleged numerous Disciplinary and Professional Conduct Rules violations stemming from five separate charges of misconduct.

On January 13, 1990, the Office of Disciplinary Counsel filed a petition to take depositions of complainants [Mr. & Mrs. A], who were scheduled to leave the country before this matter was concluded.

Respondent filed an answer on March 16, 1990, in objection to the depositions.

On March 16, 1990, the Disciplinary Board ordered that the depositions be taken, pursuant to Rule 213(f), Pa.R.D.E.

On March 20, 1990, [Mr. & Mrs. A] were deposed by the Office of Disciplinary Counsel.

On April 13, 1990, complainants [Mr. & Mrs.] [B], who presently reside in [    ], Illinois, were deposed pursuant to notice from the Office of Disciplinary Counsel.

The parties entered into a negotiated, detailed factual stipulation on May 9, 1990, concerning what the complainants would have testified about the underlying circumstances which led to the petition for discipline.

The matter was referred to Hearing Committee [    ], which was chaired by [    ]. A hearing was held on May 21, 1990. On December 18, 1990, the Hearing Committee filed its report and recommended that respondent be suspended for three years.

The Office of Disciplinary Counsel filed a brief on exceptions to the Hearing Committee report on December 27, 1990, and recommended that respondent be disbarred.

The matter was adjudicated at the February 5, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

We adopt the facts which were stipulated by the parties on May 9, 1990:

(1) Petitioner, whose principal office is located at 300 North Second Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid Rules.

(2) The respondent, [    ], Esquire, was born in 1956; admitted to practice law in Pennsylvania in 1972, and currently maintains an office for the practice of law at [   ].

(3) Pursuant to the power granted by Rule 207, Pa.R.D.E., petitioner has brought these charges of professional misconduct in violation of the Code of Professional Responsibility and the Rules of Professional Conduct.

### CHARGE I ([B])

(4) In August 1987, Mr. and Mrs. [B] gave [C], d/b/a [C] Construction Co., $6,500 as a down payment for the construction of a garage at the [B] residence. In late November 1987, the [Bs] retained respondent to attempt to recover the $6,500 as Mr. [C] had done no work.

(5) Under date of December 8, 1987, the respondent wrote to Mr. [C] and demanded the return of the [B's] $6,500. The respondent advised Mr. [C] that if the $6,500 was not returned the [Bs] intended filing suit and also

contacting the District Attorney's Office for a possible theft by deception prosecution.

(6) On December 21, 1987, the [Bs] met with the respondent and paid him his requested retainer fee of $150. The [Bs] had previously advised the respondent that Mr. [C] had done work for the [D] Medical Center in [    ], Pa. and the respondent at this meeting advised the [Bs] he had information from [D] regarding Mr. [C's] bonding company. The respondent advised the [Bs] the bonding company would pay them the $6,500 if they could not collect those funds from Mr. [C]. The respondent advised the [Bs] that if Mr. [C] was bonded the bond also had to cover the work done at the [B's] residence.

(7) In and about January and February 1988, the respondent advised the [Bs] that he had been unable to locate Mr. [C]. On March 22, 1988, the [Bs] met with the respondent. The respondent advised the [Bs] that because he could not locate Mr. [C] that he would serve him with writ of summons by publication and that after such service and a waiting period he would get a court order directing the bonding company to pay the $6,500 to the [Bs]. The respondent has never initiated any type of civil action on behalf of the [Bs] to attempt to secure the return of their $6,500 from Mr. [C].

(8) At the March 22, 1988, meeting between the respondent and the [Bs], the respondent also agreed to represent the [Bs] in their dispute with [E]. Mr. [E] was attempting to collect $765.53 from the [Bs] for what the [Bs] contended was unauthorized and improper concrete work done at a [B] property by Mr. [E]. The [Bs] had paid $803 to remove the concrete installed by Mr. [E].

The [Bs] paid the respondent his requested fee of $30 to represent them relative to Mr. [E]. The respondent contended he would write Mr. [E's] attorney demanding that [B] be reimbursed the $803 it cost them to correct the work done by Mr. [E].

(9) In April 1988, the [Bs] advised the respondent that Mr. [E] had filed suit against them, before District Magistrate [F] of [    ], Pa. to No. [    ], to collect the $765.53. The respondent advised the [Bs] to file suit against Mr. [E], and accompanied the [Bs] to Magistrate [F's] office when the [Bs] filed suit for $1,300 to recover their $803, as well as their costs and legal fees. The respondent knew that any legal fees were not recoverable. The respondent knew that the [Bs] had not incurred $497 in legal fees and costs.

(10) In April 1988, the [Bs] filed an assumpsit action against [E], to No. [    ] before District Magistrate [F]. The [Bs] claimed $1,300 as the total due them for correcting the work done by Mr. [E], to reimburse them their costs of $36, and legal fees. On May 12, 1988, the respondent represented the [Bs] at a hearing before Magistrate [F] on their claim against Mr. [E]. At this hearing, Magistrate [F] advised the [Bs] that they could not recover their legal fees.

(11) On May 19, 1988, Magistrate [F] entered a judgment for the [Bs] and against Mr. [E] for $753 and $36 in costs for a total of $789. On the suit of Mr. [E] against the [Bs], Magistrate [F] entered judgment for the [Bs] and against Mr. [E].

(12) On June 20, 1988, Mr. [E] filed a notice of appeal in the Court of Common Pleas of [G] County to No. [    ]. This appeal was from the judgment at [    ] of

Magistrate [F] in favor of the [Bs] on their suit. On June 20, 1988, the prothonotary of [G] County issued a rule to the [Bs] to file a complaint within 20 days. The notice of appeal and Rule were served on the respondent as counsel for the [Bs].

(13) On June 28, 1988, Mr. [E] filed a notice of appeal in the Court of Common Pleas of [G] County to No. [    ]. This appeal was from the judgment at [    ] of Magistrate [F] in favor of the [Bs] on the suit of Mr. [E]. The notice of appeal was served on the respondent as counsel for the [Bs].

(14) The respondent never advised the [Bs] of the appeals by Mr. [E] of both judgments of Magistrate [F]. In mid-July 1988, the [Bs] began attempting to contact the respondent to determine why they had not received the $789 from Mr. [E] pursuant to the judgment of Magistrate [F]. Despite the [Bs] leaving messages at both the respondent's office and home he failed to return their calls. [H], Esquire, who prior to July 1988 was the respondent's partner or associate, advised the [Bs] that the respondent had started working for a company named [I] Financial, which company had an office in the same building as the respondent's law office.

(15) On July 18, 1988, [E] filed a complaint against the [Bs] at No. [    ] in the Court of Common Pleas of [G] County. The complaint was served by mail on July 18, 1988, on the respondent and contained a notice to plead within 20 days. The respondent did not notify the [Bs] of his receipt of this complaint.

(16) On July 25, 1988, the [Bs] sent the respondent a letter at his home address by certified mail, return receipt,

advising the respondent that they had been unable to contact him during the preceding month and asking him to contact them by August 1, 1988. This letter was signed for by the respondent's father-in-law on July 28, 1988. The respondent failed to contact the [Bs].

(17) In August 1988, the [Bs], because of the respondent's failure to proceed on their behalf and respond to their inquiries, retained [J], Esquire, to represent them relative to both [C] and [E]. On August 12, 1988, Ms. [J] filed a complaint on behalf of the [Bs] and against Mr. [E] in the [G] County Court of Common Pleas at No. [ ], in response to the rule of June 20, 1988.

(18) By letter of August 16, 1988, to the respondent, Ms. [J] advised him that she had been retained by Mr. and Mrs. [B] to pursue their claims against Mr. [E] and Mr. [C]. Ms. [J] contended that both she and the [Bs] had been unable to contact the respondent and she requested that he transfer the [B's] files to her and offered to have a paralegal pick them up. Ms. [J] also provided the respondent with a withdrawal of appearance form and requested he sign it and return it in the provided stamped and addressed envelope.

(19) The respondent made no response of any nature to attorney [J's] letter of August 16, 1988, requiring her to reconstruct, as best she could, the [B's] files and the status of their legal matters concerning Mr. [E] and Mr. [C]. On August 31, 1988, Ms. [J] filed an answer to [E] complaint at No. [ ], which complaint had been served on the respondent, as counsel for the [Bs], on July 18, 1988.

(20) In December 1988, attorney [J] determined that the respondent had a new law office located at [ ].

Ms. [J] telephoned the respondent on December 27, 1988, and he acknowledged that he had his files pertaining to the [B's] claims against Mr. [C] and Mr. [E] but that the files were at the location of his prior office, [    ]. Ms. [J] would testify in these proceedings that the respondent contended that he was unaware of Ms. [J's] letter of August 16, 1988, and that he said he would deliver the [B's] files to Ms. [J's] office on January 3, 1989. The respondent incorrectly told Ms. [J] that he had filed a writ of summons on behalf of the [Bs] to initiate suit against Mr. [C]. Ms. [J] confirmed the phone conversation with the respondent by a letter to him of December 27, 1988, which letter the respondent received.

(21) On January 12, 1989, Ms. [J] again wrote the respondent regarding his failure to drop off the [B] files at her office on January 3, 1989. Ms. [J] offered to have a paralegal stop at the respondent's office, at his convenience, to obtain the files. The respondent received this letter but made no response of any nature.

(22) On January 25, 1989, Ms. [J] again wrote the respondent and again requested the [B] files. The respondent was asked to call Ms. [J's] office within ten days to arrange for Ms. [J's] paralegal to pick up the files. The respondent received this letter but made no response of any nature.

(23) On March 7, 1989, Ms. [J] attempted to call the respondent at his office at [    ]. The respondent's phone had been disconnected and directory assistance had no new listing.

(24) The respondent has never transmitted the [B's] files regarding [C] and [E] to their new counsel, [J].

## EXHIBITS

(25) The following documents are authentic:

(a) Transcript of the depositions of [Mr. and Mrs. B] taken on April 13, 1990;

(b) Petitioner's Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12 marked for identification in the depositions of the [Bs].

## CHARGE II ([K])

(26) In or about September 1986, [Mr. & Mrs. K] retained the respondent, or the firm of [H] and [respondent] to represent them in their personal financial difficulties, which included a threatened mortgage foreclosure on their home. On or about September 17, 1986, the respondent advised Mr. and Mrs. [K] to file bankruptcy and asked Mrs. [K] to provide him with a list of creditors and amounts owed within two days so a petition in bankruptcy could be immediately prepared and filed. The respondent requested $400 or $500 as an initial retainer.

(27) When the [Ks] retained the respondent they were about four months in arrears on the mortgage on their home.

(28) In October 1986, Mrs. [K] delivered a list of creditors and amounts owed to the respondent's office. Subsequently, the respondent's secretary called Mrs. [K] and scheduled an appointment for October 27, 1986, and requested that the [Ks] bring the retainer. When Mrs. [K] arrived for the appointment, the respondent was absent from his office. [H], an attorney with whom the respondent shared offices, or with whom the respondent was a partner, accepted $400 from the [Ks] on behalf of the respondent.

(29) On or about December 12, 1986, the respondent called Mrs. [K] and advised her that the petition in bankruptcy was prepared and ready to be filed. The respondent requested a filing fee of $500, and advised that he needed the $500 immediately. On December 15, 1986, Mrs. [K] delivered $500 to the respondent's office.

(30) In April 1987, [H], Esquire, the attorney with whom the respondent shared office space, or with whom the respondent was a partner, contacted Mrs. [H] and advised her that the respondent had prepared an incomplete petition in bankruptcy dated December 14, 1986, but that no petition had even been filed. The [Ks] met with attorney [H] and signed the petition, as prepared by the respondent. Mr. [H] filed the petition on April 13, 1987, to No. [    ] in the U.S. Bankruptcy Court for the [    ] District of Pennsylvania. The petition was for a Chapter 11 proceeding, which Chapter generally is intended for the reorganization of a business entity, instead of for a more appropriate Chapter 13 proceeding, which Chapter allows for a wage earner plan to resolve an oppressive debt situation of an individual. The filing fee for a Chapter 13 proceeding would have been only $90. The filing fee under Chapter 11 was $500.

(31) On April 20, 1987, attorney [H] filed a statement of financial affairs and schedules required in the bankruptcy proceedings. These documents had been prepared by the respondent, and were incomplete. Schedule A-2 failed to list the [K's] unsecured creditors; Schedule B-2 failed to list the [K's] personal property; Schedule B-4 failed to claim any exemptions; the Creditors List (Form 3084) was not completed; the 20 largest unsecured creditors were not listed on Form 3086; and there was no disclosure of the legal fees received from the [K].

(32) Attorney [H] filed the petition for bankruptcy, and subsequently the schedules. The respondent subsequently did nothing relative to what had been filed.

(33) In late June 1987, the [Ks] received notice of a creditor's meeting to be held on July 28, 1987. Mrs. [K] subsequently spoke to the respondent and complained about his inattentiveness to the [K's] bankruptcy and his apparent lack of concern for the [K's] legal and financial affairs. The respondent advised Mrs. [K] that the [Ks] were free to retain other counsel and incorrectly contended the [Ks] had never paid him any fees.

(34) The [Ks] and the respondent appeared for the creditor's meeting on July 28, 1987. The respondent at that time returned $410 to the [Ks], the difference between the filing fee for a Chapter 11 and that for a Chapter 13. The trustee, [L], Esquire, advised the respondent and the [Ks] that a motion to convert the proceedings to a Chapter 13 should be filed.

(35) In or about August 1987, the [Ks] consulted with [M], Esquire, concerning their bankruptcy. By order of October 2, 1987, the Bankruptcy Court directed the withdrawal of the respondent's appearance for the [Ks] and entered the appearance of Mrs. [M].

(36) In January 1988, the Bankruptcy Court permitted the [K's] mortgagee to foreclose upon and sell the [K's] home.

## EXHIBITS

(37) The following copies of documents are authentic:

(a) Business card of [H] bearing handwritten notation of October 27, 1986, reflecting the receipt of $400 from [Mrs. K] pertaining to the [K] bankruptcy.

(b) U.S. Bankruptcy Court petition docket for [K] bankruptcy filed to No. [    ].

(c) [K] Chapter 11 voluntary petition in bankruptcy filed on April 13, 1987, to No. [    ].

(d) Order appointing debtor in possession.

(e) Notice of April 14, 1987, to debtor of need to file appropriate list of creditors, schedules and statements.

(f) Bankruptcy Schedules A, A-2, A-3, B, B-2, B-3, B-4; summary of debts and property; current income and current expenses statement; statement of financial affairs; list of creditors; list of creditors holding 20 largest unsecured claims; list of equity security holders; Exhibit "A"; statement of executory contracts; and statement pursuant to Rule 2016(b); all of which documents were filed with the Clerk of the Bankruptcy Court on April 20, 1987.

(g) List of creditors.

(h) Order of June 23, 1987, scheduling meeting of creditors for July 28, 1987.

(i) Attendance sheet for July 28, 1987, meeting of creditors.

(j) Application to employ realtor; filed September 14, 1987.

(k) October 2, 1987, order authorizing debtors to employ a realtor.

(l) Motion of debtors to employ [M], Esquire, as counsel; filed October 1, 1987.

(m) Order of October 2, 1987, entering appearance of [M], Esquire, for the debtors and withdrawing the appearance of [respondent], Esquire.

(n) Motion to modify stay, filed December 11, 1987.

(o) Order filed December 11, 1987, on motion to modify stay.

(p) Application for employment of counsel for debtors-in-possession, filed December 22, 1987.

(q) Amendment to Schedule A-3; filed December 28, 1987.

(r) Order of December 29, 1987, appointing [M] as the debtor's counsel as of the filing of the voluntary petition.

(s) Motion for default; filed January 8, 1988.

(t) Order of January 21, 1988, modifying stay to permit debtor's mortgagee to foreclose and sell debtor's residence.

## *CHARGE III ([N])*

(38) In May 1987, [N] retained the respondent to represent her in a protection from abuse action, as well as in divorce and equitable distribution proceedings. The respondent and Ms. [N] agreed upon a legal fee of $1,500 and 5 percent of the marital assets distributed to Ms. [N]. Ms. [N] paid the $1,500 in full by July 1987.

(39) The respondent filed a protection from abuse action on August 12, 1987, to No. [　] in the [G] County Court of Common Pleas. On that date, the court entered a temporary protective order excluding the husband from the marital residence and prohibiting abusive, threatening or harassing conduct by the husband towards the respondent's client.

(40) The divorce action had been initiated by the husband on May 7, 1987, by the filing of a complaint in divorce in [G] County to No. [　]. This is the first and last action of record that the respondent took on

behalf of Ms. [N] in the divorce and equitable distribution proceedings.

(41) A support hearing was scheduled for June 1, 1988, and the respondent was to pick up Ms. [N] at her place of employment and take her to the hearing. Approximately one hour before the time for the hearing Ms. [N] received a call from the respondent's staff advising her that the hearing had been canceled. Thereafter, Ms. [N] attempted on numerous occasions to speak to the respondent concerning her case by calling both his home and office. The respondent never returned any of these calls or otherwise communicated with Ms. [N].

(42) On July 29, 1988, Ms. [N] attempted to call the respondent at his office and was told that he no longer worked there. Ms. [N] was advised that the respondent was then working at an office of [I] Financial Association, which office was located in the same building, and on the same floor, as the respondent's prior law office.

(43) The respondent took or returned no calls from Ms. [N] after July 10 or 11, 1988.

(44) Ms. [N's] inability to contact the respondent, and the press of her legal affairs, caused her to retain [O], Esquire, in August 1988. In August and September 1988, Mr. [O] or his staff made several attempts to contact the respondent to obtain Ms. [N's] file. The respondent failed to respond to any of these inquiries or transmit the [N] file to Mr. [O].

(45) In October 1988, Mr. [O] saw the respondent at the office of a District Magistrate and personally requested that the respondent transfer the [N] file. The respondent promised to transfer the file but thereafter did not.

(46) In December 1988, Mr. [O] wrote to the respondent again requesting the [N] file. The respondent made no reply and has never transferred the file or returned to Ms. [N] the unearned portion of the $1,500 [the $1,700 in the petition for discipline is a typographical error] in fees he received. The respondent had an ethical duty to account to Ms. [N] for the $1,500, but did not.

## EXHIBITS

(47) The following copies of documents are authentic:

(a) Prothonotary's docket to [G] County No. [     ], [*Ms. N*] *v.* [*Mr. N*], protection from abuse action.

(b) Petition for protection from abuse, filed August 12, 1987.

(c) Temporary protection order of August 12, 1987.

(d) Sheriff's return of service of August 14, 1987, for service of petition and order.

(e) Protective order of December 1, 1987.

(f) Order of December 28, 1987, vacating order of December 1, 1987.

(g) Prothonotary's docket to [G] County No. [     ], [*Mr. N*] v. [*Ms. N*] divorce.

(h) Complaint in divorce and affidavit of service.

(i) Inventory and appraisement of plaintiff.

(j) Inventory and appraisement of defendant.

## CHARGE IV ([P])

(48) In August of 1984, [P] suffered personal injuries as a result of an altercation with [Q], [R], and [S], principals and/or employees of [JJ] Enterprises, trading as [T]. Mr. [P] retained the respondent in August of 1984 on a con-

tingency fee basis to file suit on his behalf for, inter alia, his personal injuries.

(49) On August 31, 1984, the respondent filed a multiple-count complaint captioned [P] v. [T, Q, S & R] at [   ] in the [G] County Court of Common Pleas. An amended complaint was filed on September 28, 1984.

(50) On March 22, 1985, the court granted the defendant's demurrer to Counts V, VII, IX, X and XI of the amended complaint because each of the counts failed to state a cause of action.

(51) On April 15, 1985, the defendants filed their answer, new matter and counterclaim, with a notice to plead. The respondent received service of these pleadings. The respondent failed to inform Mr. [P] of the counterclaim, or take any action on his behalf relative to these pleadings.

(52) In November of 1987, the respondent began discovery and filed interrogatories, requests for production of documents, and requests for admission.

(53) By letter of April 15, 1988, the respondent sent Mr. [P] a copy of a certificate of readiness dated April 15, 1988. The respondent claimed he was filing the certificate on that date with the prothonotary. The respondent also sent Mr. [P] copies of transmittal letters to [U] and [V], attorneys for the defendants, by which the respondent represented that he was sending copies of the certificate of readiness to them. The certificate of readiness was never filed. Attorneys [U] and [V] would both testify in these proceedings that they never received the April 15, 1988, transmittal letter of the certificate of readiness from the respondent.

(54) Because Mr. [P] had repeatedly been unable to contact the respondent, in August of 1988 he went to the respondent's residence. The defendants made no settlement offers. The respondent misrepresented to Mr. [P] that he had a meeting scheduled in or about late August 1988, with the defendants' counsel. No such meeting was scheduled.

(55) The defendants' September 5, 1985, motion for summary judgment was scheduled for both the July and August 1988 pretrial argument lists. The arguments were stricken from the lists on both occasions because of the respondent's failure to file a brief as required by [G] County Local Rules 6.1 and 6.2. The respondent failed to make Mr. [P] aware of these developments in his case.

(56) On August 8, 1988, the defendants filed a petition for rule to show cause why the defendants'. motion for summary judgment or partial summary judgment should not be granted. On August 8, 1988, Judge [W] issued an order and a rule to show cause why judgment should not be entered. The rule was on Mr. [P] and was served on the respondent by [U], attorney for the defendants, by letter of August 29, 1988. The respondent never advised Mr. [P] of the rule, nor did he take any action on his behalf relating to the rule.

(57) On September 21, 1988, the defendants filed a petition to enter order granting summary judgment to the defendants. This petition, which was served on and received by the respondent, was based on the respondent's continued failure to file a brief in opposition to the September 1985 motion for summary judgment, or to respond to the rule to show cause of August 8, 1988. The respondent never informed Mr. [P] of the petition, nor did

he file any response or take any other action on behalf of Mr. [P]. The respondent had timely obtained the petition and proposed order from the office of [H], Esquire.

(58) On September 27, 1988, the court entered an order granting the defendants' motion for summary judgment. The respondent never informed Mr. [P] of this order. The respondent received the order.

## EXHIBITS

(59) The following copies of documents are authentic:

(a) Prothonotary's docket to [G] County No. [   ], [P] v. [Q, R, S & T].

(b) Complaint in assumpsit, trespass and equity; filed August 31, 1984.

(c) Amended complaint; filed September 28, 1984.

(d) Opinion and order of March 25, 1985, granting a demurrer to Counts V, VII, IX, X and XI of the amended complaint.

(e) Defendants' answer, new matter and counterclaim to plaintiff's amended complaint; filed April 15, 1985.

(f) Motion for summary judgment on the pleadings or, in the alternative, for summary judgment or partial summary judgment; filed September 5, 1985.

(g) Brief in support of defendants' motion for judgment on the pleadings or, in the alternative, for summary judgment or partial summary judgment; filed September 5, 1985.

(h) Default notice of September 5, 1985.

(i) Letter of January 6, 1988, from [respondent] to [P]; enclosure with January 6, 1988, letter consisting of a copy of a letter of January 4, 1988, from [respondent]

to [V], Esquire, and a copy of the envelope reflecting the mailing of these items to [P].

(j) Letter of April 15, 1988, from [respondent], Esquire, to [P]; and copies of enclosed letter of April 15, 1988, to the [G] County Prothonotary's Office purporting to transmit a certificate of readiness for filing, a copy of a certificate of readiness dated April 15, 1988, at No. [ ]; a copy of a letter of April 15, 1988, from [respondent], Esquire, to [U], Esquire, purporting to transmit a copy of the certificate of readiness; and a copy of the envelope transmitting these materials to Mr. [P].

(k) August 2, 1988, order striking the case of [P] v. [T], et al, from the pretrial argument list for the plaintiff's failure to comply with [G] County Local Rules pertaining to the filing of briefs.

(l) Defendants' petition for rule to show cause why defendants' motion for summary judgment or partial summary judgment should not be granted; filed August 8, 1988.

(m) Defendants' petition to enter order granting summary judgment to defendants; filed September 21, 1988.

(n) Order of September 27, 1988, granting defendants' motion for summary judgment, and entering summary judgment.

## CHARGE V ([A])

(60) In or about February of 1987, [Mr. & Mrs. A] retained the respondent to file suit on their behalf against [X], [Y], [Z] Realty Co., [AA] Manor Apartments, [BB], [CC], [DD] and [EE]. The suit grew out of an incident that occurred on March 9, 1986, at the [AA] Manor Apartments, [HH], Pa.

(61) On February 26, 1987, the respondent filed a complaint, captioned in assumpsit, in [FF] County against [X], et al. The suit was docketed to No. [   ] Civil 1987.

(62) In May of 1988, Judge [GG] handed down an opinion, and amended opinions and orders, dismissing various counts against various defendants. At that point, the respondent advised Mr. [A] that he desired to appeal these dismissals.

(63) The respondent informed Mr. [A] that he needed $200 to cover the costs of the appeal. On or about June 3, 1988, Mr. [A] paid the respondent this sum. The respondent never filed an appeal. The respondent has never accounted to the [As] for the $200 or returned that sum to them.

(64) In July of 1988, a request for production of documents directed to the [As] was filed. The respondent as counsel of record was receiving case documents on behalf of the [As] but failed to inform his clients of the request or to take any action relative thereto.

(65) On October 26, 1988, a motion to compel and in the alternative for sanctions was directed to the [As], via the respondent. The respondent failed to inform the [As] of this motion or to take any action relative thereto on their behalf.

(66) During the summer and early fall of 1988, the [As] made repeated unsuccessful attempts to contact the respondent. The respondent was aware of the [As] numerous phone calls but failed to respond. Because of their inability to contact the respondent, the [As] contacted [II], Esquire, of [HH], Pa. in an attempt to have Mr.

[II] influence the respondent to communicate with them regarding the status of their case.

(67) In or about early October of 1988, attorney [II] attempted to contact the respondent by phone but was unsuccessful. On October 10, 1988, he wrote, by regular mail, to the respondent at his residence asking him to call in regard to the [As]. The respondent failed to respond to either the phone call or the letter.

(68) On November 8, 1988, attorney [II] again wrote to the respondent, by registered mail, restricted delivery, requesting that he contact him to discuss the failure of communication between the respondent and the [As]. The respondent, despite repeated notices from the Post Office, failed to pick up this letter.

(69) Attorney [II] spoke with the respondent in the [FF] County Courthouse in or about late November of 1988. The respondent assured him that he would contact the [As] to discuss their case. The respondent has not contacted the [As] since November 13, 1988, nor has he from at least May of 1988 done anything to further their litigation.

## EXHIBITS

(70) The following copies of documents are authentic:

(a) Transcripts of the depositions of [Mr. & Mrs. A] taken on March 20, 1990.

(b) Petitioner's Exhibits 1, 2, 3, 4, 5, 6, 7, 8 and 9 marked for identification in the depositions of the [A].

(c) Letter of November 8, 1988, of [II], Esquire, to respondent, and envelope reflecting non-delivery of the letter.

## CONCLUSIONS OF LAW

(1) Respondent's conduct is in violation of the following Disciplinary Rules:

(a) D.R. 1-102(A)(4)—which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation;

(b) D.R. 1-102(A)(5)—which prohibits an attorney from engaging in conduct that is prejudicial to the administration of justice;

(c) D.R. 1-102(A)(6)—which prohibits an attorney from dealing in conduct that adversely reflects on his fitness to practice law;

(d) D.R. 6-101(A)(1)—which prohibits an attorney from handling a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it;

(e) D.R. 6-101(A)(2)—which prohibits an attorney from handling a legal matter without preparation adequate in the circumstances;

(f) D.R. 6-101(A)(3)—which prohibits an attorney from neglecting a legal matter entrusted to him;

(g) D.R. 7-101(A)(1)—which prohibits an attorney from intentionally failing to seek the lawful objectives of a client through reasonably available means;

(h) D.R. 7-101(A)(2)—which prohibits an attorney from intentionally failing to carry out a contract of employment entered into with a client for professional services; and

(i) D.R. 7-101(A)(3)—which prohibits an attorney from prejudicing or damaging his client during the course of the professional relationship.

(2) Respondent's conduct also violated the following Rules of Professional Conduct:

(a) RPC 1.1—which requires an attorney to provide competent representation;

(b) RPC 1.3—which requires an attorney to act with reasonable diligence and promptness;

(c) RPC 1.4(a)—which requires an attorney to keep a client informed of the status of a matter and to comply with requests for information;

(d) RPC 1.4(b)—which requires an attorney to explain a matter to a client to the extent necessary for the client to make informed decisions regarding the representation;

(e) RPC 1.16(a)(3)—which provides that an attorney shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if the lawyer is discharged;

(f) RPC 1.16(d)—which provides that upon termination of representation an attorney shall take steps to reasonably protect a client's interest and return papers and unearned fees.

(g) RPC 3.2—which requires an attorney to make reasonable efforts to expedite litigation consistent with the interests of the client;

(h) RPC 8.4(c)—which prohibits an attorney from conduct involving fraud, dishonesty, deceit or misrepresentation; and

(i)  RPC 8.4(d)—which prohibits an attorney from engaging in conduct that is prejudicial to the administration of justice.

## DISCUSSION

Respondent testified before Hearing Committee [    ] that "I know I was negligent in all these cases."  (N.T. 193.)  Respondent also stipulated to the testimony the complainants would offer concerning his representation of their claims.  The issues before the Disciplinary Board are, therefore:  Whether respondent engaged in misconduct other than and in addition to, his acknowledged negligence; and the appropriate discipline to be imposed.

## A.  THE CHARGES

### *CHARGE I ([B])*

Respondent stipulated, and the complainants testified, that [Mrs. & Mr. B] retained respondent in August 1987 to represent them in a civil action against [C] to recover $6,500 for prepaid construction work which was not performed.

On December 8, 1987, respondent wrote to [C] in an effort to recover the [Bs] $6,500.  On December 21, 1987, the [Bs] met with respondent, at which time they paid him a $150 retainer fee and he advised them that if he was unable to locate [C], then [C's] bonding company would refund their $6,500.  Although respondent subsequently advised the [Bs] on March 22, 1988, that he would serve [C] with a writ of summons by publication and obtain a court order if necessary to secure their money, he never took any further action on the case.

Respondent also agreed at the March 22, 1988, meeting with the [Bs] to defend them in a separate action involving [E], in which [E] was attempting to collect $765.53 from the [Bs] for concrete work they claimed was unauthorized and improper. The [Bs] paid respondent $30 to undertake this representation. In April 1988, [E] filed suit against the [Bs], and under respondent's advice, the [Bs] filed suit before District Magistrate [F] for $1,300, in order to recover the $803 they had paid [E] and their costs and legal fees. On May 12, 1988, respondent represented the [Bs] before Magistrate [F] and was informed legal fees were not recoverable. Seven days later, Magistrate [F] entered judgment for the [Bs] for $753 and $36 in costs, and also ruled against [E] in his suit against the [Bs].

[E] subsequently appealed both of these decisions to the Court of Common Pleas of [G] County. Respondent never answered the notice of appeals, never filed a response to [Es] July 18, 1988, complaint, or informed the [Bs] of the suits against them or the fact that they may lose their $789 awarded by Magistrate [F]. Respondent had no further contact with the [Bs]. Although he spoke with their subsequent counsel, [J], Esquire, on December 27, 1988, he ignored [J's] numerous requests, both before and after their conversation, for the return of the [B] file, and incorrectly stated he had filed a writ of summons on behalf of the [Bs] in their case against [C].

The record in this case speaks for itself. Respondent himself has admitted that he neglected the [Bs], which supports a finding he violated D.R. 6-101(A)(3) and RPC. 1.3. Respondent's mishandling of the [B's] legal matters reflects a damaging refusal to carry out a contract of

employment for which he had received payment, despite the availability of lawful means to satisfy the clients' objectives using reasonable diligence and promptness. Such conduct is in direct violation of D.R. 7-101(A)(1), D.R. 7-101(A)(2), D.R. 7-101(A)(3). The client was not sufficiently informed of the status of his case and therefore unable to make informed decisions regarding his legal matter. Such non-performance by respondent violates RPC 1.4(a) and RPC 1.4(b). Respondent also violated RPC 1.16(a)(3) with his refusal to withdraw from representation by surrendering the [B's] file to their new counsel, and RPC 8.4(c) with his dishonest misrepresentation to attorney [J] that he had filed a writ of summons on behalf of the [Bs], when in fact he had not.

## CHARGE II ([K])

In September 1986, [Mr. & Mrs. K] retained respondent to represent them regarding personal financial difficulties, including a threatened mortgage foreclosure on their home. Respondent contended that the filing fee would be $250, and his legal fee $700. He requested an initial retainer of $400. Respondent has stipulated that the [Ks] would testify that he advised them at this time to stop paying their creditors, including the mortgage, even though they were both employed and therefore able to service some of their personal debts.

In October 1986, Mrs. [K] appeared for a scheduled appointment with respondent, bringing with her the $400 retainer fee. Respondent was absent from the office but [H], Esquire, with whom respondent shared office space, accepted the retainer. Prior to this meeting, Mrs. [K]

had delivered a list of creditors and amounts owed to respondent's office.

On or about December 12, 1986, respondent called Mrs. [K] and advised her that the bankruptcy petition was prepared and ready to be filed, but the filing fee was $500, not $250, as he had previously claimed. Mrs. [K] delivered the $500 to respondent's office on December 15, 1986.

In late January 1987, respondent misrepresented to Mrs. [K] that he had filed her petition for bankruptcy, and again advised her not to satisfy debts. The [Ks] never heard from respondent or his office, despite their reported inquiries, until [H], Esquire, contacted them in April 1987 and informed them that respondent's incomplete December 14, 1986, petition in bankruptcy had never been filed. On April 13, 1987, [H] filed a Chapter 11 bankruptcy petition, which is more appropriate for a business than an individual and has a $90 filing fee, instead of $500. [H] also filed an incomplete statement of financial affairs on schedules which had been prepared by respondent and which failed to disclose the fees he had received. These errors were never corrected.

On July 28, 1987, respondent appeared for a scheduled meeting with the [K's] creditors, at which time trustee [L], Esquire, insisted that respondent return $410, the difference between filing fees for Chapter 11 and 13 proceedings, to the [Ks].

In August 1987, the [Ks] consulted new counsel and on October 2, 1987, the Bankruptcy Court ordered respondent to withdraw his representation.

In January 1988, the [K's] creditors foreclosed on their mortgage and sold their home. Had respondent filed

a Chapter 13 wage earners plan when consulted by the [Ks] in 1986, their home may have been saved because some funds were available for partial payments and a workout would likely have resulted.

Clearly respondent's negligent handling of the [K] case severely prejudiced his clients and interfered with the administration of justice. His conduct was replete with dishonesty and deceit, adversely reflected upon respondent's fitness to practice law, in violation of D.R. 1-102(A)(4), D.R. 1-102(A)(5), D.R. 1-102(A)(6); D.R. 6-101(A)(3); and D.R. 7-101(A)(3). Respondent failed to seek his client's lawful objectives of correcting their precarious financial situation, despite his contract of employment, in violation of D.R. 7-101(A)(1) and D.R. 7-101(A)(2). Respondent undertook a matter he was incompetent to handle, evidenced by his ignorance of the correct bankruptcy petition to be filed in the case of individual debtors, and failed to adequately prepare himself for his representation of the [Ks], in violation of D.R. 6-101(A)(1) and D.R. 6-101(A)(2).

## CHARGE III ([N])

In May 1987, [N] retained respondent to represent her in a protection from abuse action and divorce and equitable distribution proceedings for a fee of $1,500 and 5 percent of Ms. [N's] share of the marital assets. By July 1987, [N] had paid respondent $1,500.

Respondent filed a protection from abuse action on August 12, 1987, and received a temporary protective order. On November 23, 1987, six months after Mr. [N] initiated the divorce action, respondent filed an inventory and appraisement on behalf of his client.

Thereafter, respondent took no further action on behalf of his client and never communicated with her, necessitating her retention of new counsel in August 1988. Despite repeated requests by [N's] new counsel, respondent failed to surrender her file or refund the unearned portion of fees he had received.

Respondent obviously failed to exercise due diligence and promptness in his representation of Ms. [N], or to make reasonable efforts to expedite litigation consistent with her desire to obtain a divorce and property settlement, in violation of RPC 1.3 and RPC 3.2.

Respondent's failure to communicate with his client and withholding of her file prohibited her from making informed decisions and protecting her interests, in violation of RPC 1.4(a), RPC 1.4(b), RPC 8.4(d), and RPC .16(d), which was additionally violated when respondent failed to surrender the unearned portion of his fee.

## CHARGE IV ([P])

On August 31, 1984, respondent filed a multiple count complaint on behalf of [P], against [T], [Q], [S] and [R] for personal injuries [P] sustained as a result of an altercation with the principals and/or employees of [JJ] Enterprises, trading as [T].

On September 28, 1984, an amended complaint was filed. Respondent failed to inform [P] of the defendants' demurrer to several counts of the amended complaint for failure to state a cause of action, or to inform him of the defendants' April 1985 answer, new matter and counterclaim, or their September 1985 motion for partial or total summary judgment, or the September 5, 1985,

notification that [P] was in default for his failure to answer the counterclaim.

In November 1987, after repeated inquiries by [P], respondent began discovery by filing interrogatories, and requests for production of documents and admissions.

In April 1988, respondent sent [P] copies of a certificate of readiness and transmittal letters to opposing counsel which he never actually filed or sent.

In August 1988, [P] went to respondent's residence after he was repeatedly unable to contact him. Respondent misrepresented that the defendants had proposed a settlement offer which he had declined.

Respondent also failed to inform [P] that arguments against the defendants' motion for summary judgment had been stricken from pretrial argument lists twice because of respondent's failure to file a brief.

Respondent failed to take any action after being personally served by opposing counsel with the defendant's petition for rule to show cause why partial or total summary judgment should not be granted.

Respondent never informed [P] of the court's September 27, 1988, order granting the motion for summary judgment. Instead, he scheduled a December 1988 appointment with [P] which he failed to keep.

Respondent has had no further contact with [P].

As alleged by the Office of Disciplinary Counsel, respondent's negligent misrepresentation of [P] substantially prejudiced both his client and the administration of justice, and his lack of communication precluded his client from having the information necessary to make informed decisions which would protect his legal interests. Respondent's deceitful conduct and his inadequate preparation

resulted in the failure to competently and diligently perform the legal services he had agreed to furnish [P]. Respondent's conduct is therefore, in violation of the following Disciplinary and Professional Conduct Rules: D.R. 6-101(A)(2), D.R. 6-101(A)(3), D.R. 7-101(A)(1), D.R. 7-101(A)(2), D.R. 7-101(A)(3); and RPC 1.1, RPC 1.3, RPC 1.4(a), RPC 1.4(b), RPC 8.4(c), and RPC 8.4(d).

## CHARGE V ([A])

In or about February 1987, [Mr. & Mrs. A] retained respondent to represent them in a civil suit against various defendants. On February 26, 1987, respondent filed a complaint, captioned in assumpsit, on their behalf.

In May 1988, the complaint was dismissed, as to some defendants. Respondent advised Mr. [A] that he wanted to appeal the dismissals.

On or about June 3, 1988, [A] paid respondent the $200 respondent said was necessary to file the appeal. Respondent never acted on the appeal.

Respondent failed to take any action on behalf of Mr. and Mrs. [A] despite a July 1988 request for production of documents and October 1988 motion to compel production and in the alternative for sanctions.

Respondent failed to take any action on behalf of Mr. and Mrs. [A] or to discuss the matter with subsequent counsel they were forced to retain. The case was dismissed with prejudice.

Once again, respondent entered into an employment contract, failed to communicate with his clients and therefore deprived them of the information necessary to make informed decisions regarding their case. Further, he misrepresented the status of his inaction on the matter, with

the result that the client and judicial system in general have been prejudiced. Such conduct is in blatant violation of RPC 1.3, RPC 1.4(a), RPC 1.4(b), RPC 8.4(c), and RPC 8.4(d).

## B. ADJUDICATION

Respondent's conduct in the five aforementioned charges evinces a troubling pattern of neglect, misrepresentation, inadequate preparation, miscommunication and deceit. There were a total of 41 violations involving 18 Rules. Such egregious misconduct warrants grave discipline in order to protect the interests of the public and maintain the integrity of the bar. *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 526 A.2d 1180 (1987).

Obviously such serious misconduct as respondent's necessitates removal from the practice of law in order to ensure that public interest is protected and confidence in the bar is not eroded. The real question is the duration for which respondent should be suspended or disbarred as Disciplinary Counsel requests.

It is respondent's contention, in mitigation, that he was negligent in all these cases, but that the negligence did not begin until the end of 1987, and that his performance did not totally deteriorate until mid-1988, when financial and personal problems with his practice escalated. The evidence which respondent presented to support his claim of severe problems with his partner, [H], consisted of his conclusion, based on seven years of practice and 30 misappropriation cases, that his partner had converted $90,000 in estate funds from his own brother's estate.

The widow did not, however, institute a civil action against him, and no criminal investigation was ever initiated.

Respondent's misconduct, with the exception of the [K] case, occurred during this period when respondent claimed to be under immense stress. We note that respondent was born with a congenital defect which he has courageously overcome in spite of a partial amputation. Respondent testified that he takes medication for stress and colitis, for which he has also been hospitalized. We are also aware that respondent was, in his words, a "crusader," (N.T. 151) based on his Latino background and the fact that he was a Spanish-speaking practitioner.

All of these facts coupled with respondent's voluntary withdrawal from the practice of law to his present position as a claims adjuster for [    ] Insurance and his prior disciplinary history of two informal admonitions for neglect, lead to the conclusion that the public and the bar are best protected by suspending respondent from the practice of law for a period of three years. Respondent's physical disability and ill health and the attendant pressures, with his voluntary removal from private practice to a position of claims adjuster are found to be sufficient to withhold the ultimate discipline of disbarment.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent [    ] be suspended from the practice of law for a period of three years.

It is further recommended that the court direct that respondent pay all the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Keller, Brown, Hill and Powell did not participate in the adjudication.

## ORDER

And now, April 30, 1992, a rule having been issued upon respondent on August 28, 1991, to show cause why he should not be disbarred and no response thereto having been filed, the said rule is hereby made absolute, and it is hereby ordered that [respondent] be and he is disbarred from the bar of this Commonwealth, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.